**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHITUNDA TILLMAN, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05 C 910** |
| | ) | |
| **NEW LINE CINEMA CORP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In May 2005, Chitunda Tillman, Sr. filed a copyright infringement action against New Line Cinema Corporation, Time Warner Inc., and other defendants. Before he filed suit, Mr. Tillman was represented by a lawyer, but the lawyer withdrew after defense counsel provided him with evidence that persuaded him Mr. Tillman's claim was groundless. *See* Ferber Suppl. Decl., Exs. A & B. As a result, Mr. Tillman filed his suit *pro se*. A little over two months after he filed the lawsuit, another attorney, Brian Nix, filed an appearance on his behalf. Mr. Nix pursued the case for about two years. In May 2007, however, shortly after New Line and Time Warner filed a motion for summary judgment, Mr. Nix sought and was granted leave to withdraw.

The case, originally assigned to Judge John Nordberg, was reassigned to the undersigned judge's calendar in late May 2007. The Court granted defendants' motion for summary judgment on March 7, 2008. The court of appeals recently affirmed this Court's decision. *See Tillman v. New Line Cinema Corp.*, No. 08-1667, 2008 WL

4488204 (7th Cir. Oct. 7, 2008).

Defendants have moved the Court to award defendants attorney's fees and costs against Mr. Tillman pursuant to 17 U.S.C. § 505 and 42 U.S.C. § 1988 and against both Mr. Tillman and Mr. Nix pursuant to 28 U.S.C. § 1927. For the reasons stated below, the Court grants defendants' motion in part.

## Background

On February 14, 2005, Mr. Tillman, proceeding *pro se*, filed a two count copyright infringement complaint against eight defendants. He alleged that in 1998, he wrote a screenplay entitled *Kharisma Heart of Gold*, registered it with the United States Copyright Office that July, and submitted a copy of it to the Writers Guild of America (WGA) around the same time. The screenplay was based on Mr. Tillman's personal experience with his sick daughter, who needed serious heart surgery to avoid death. In 2002, New Line released the motion picture *John Q*, based on a screenplay by James Kearns. Mr. Tillman claimed that *John Q* was substantially similar to *Kharisma Heart of Gold*. He alleged that Mr. Kearns was affiliated with the WGA, stole his screenplay, and sold it to New Line.

Mr. Tillman then retained Mr. Nix as counsel. On April 25, 2005, Mr. Nix filed a sixty-three page amended complaint on Mr. Tillman's behalf, asserting nine claims against twenty-three defendants. In addition to copyright infringement claims, Mr. Nix asserted claims of denial of equal protection and due process, conspiracy to violate Mr. Tillman's civil rights, intentional infliction of emotional distress, fraudulent misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

2

In early May 2005, shortly after Mr. Nix filed the amended complaint, defendants' counsel wrote him a letter. In the letter, defense counsel made reference to earlier correspondence with Mr. Tillman's original lawyer (a copy of which Mr. Nix had attached to the amended complaint) and that lawyer's resulting decision to withdraw from representation of Mr. Tillman. Defense counsel put Mr. Nix on notice of defendants' contention that Mr. Tillman's claims were frivolous based on what counsel called "irrefutable evidence" of independent prior creation of *John Q*. Counsel also advised Mr. Nix of defendants' intention to request sanctions. *See* Ferber Suppl. Decl., Ex. C. Mr. Nix does not appear to have replied to defense counsel's letter.

In July 2005, defendants moved to dismiss the claims against a number of the defendants for lack of personal jurisdiction and moved to dismiss the non-copyright claims for failure to state a claim. Within a few days, Mr. Nix moved for leave to file a second amended complaint. The defendants objected to what they considered an end run around their motion to dismiss. The magistrate judge to whom Judge Nordberg had referred pretrial proceedings essentially agreed, telling Mr. Nix that he should not simply file a second amended complaint but that he could attach a proposed amended complaint to his response to the motion to dismiss if he felt it would cure the defects the defendants asserted. The magistrate judge told Mr. Nix that if he disagreed with the defendants' arguments for dismissal, he should file a response to the motion to dismiss. Mr. Nix then filed a forty-three page second amended complaint that dropped all but one of the non-copyright claims and added two new state law claims. He did not respond to the motions to dismiss, and his second amended complaint did not address the defendants' arguments for dismissal.

On March 31, 2006, Judge Nordberg granted defendants' motions to dismiss, dismissing all of the claims against the individual defendants and the WGA for lack of personal jurisdiction, and dismissing with prejudice the non-copyright claims against the other defendants. *See* Order of Mar. 31, 2006 (docket no. 85).

About a week after Judge Nordberg's ruling, defense counsel again wrote to Mr. Nix, setting out in some detail the basis for defendants' contention that Mr. Tillman's claims were baseless. *See* Ferber Suppl. Decl., Ex. D (Ferber Apr. 7, 2006 letter). Counsel asked Mr. Nix to drop the case and restated defendants' intention to seek sanctions against both Mr. Nix and Mr. Tillman if the case continued.

Mr. Nix responded about two weeks later. *See id.* (Nix Apr. 22, 2006 letter). In response to defense counsel's contention that news articles demonstrated Mr. Kearns' independent prior creation of the *John Q* screenplay, Mr. Nix said he had been unable to locate the articles himself; he questioned the authenticity of the articles defendants had cited. Mr. Nix also laid out the basis for his contention that Mr. Kearns had not actually created the screenplay at the earlier date cited by defendants. In response to defendants' contention that substantial similarity between the two works was lacking and that any similarities involved uncopyrightable ideas (as opposed to expression of ideas), Mr. Nix likewise demurred. He stated that although the law required only one similarity, there were many, though he did not identify any of them. Mr. Nix also stated that Mr. Kearns, via his WGA membership, had access to Mr. Tillman's screenplay, which Mr. Tillman had submitted to the WGA in 1998. Mr. Nix also noted that the news articles defendants had cited concerning Mr. Kearns' purported earlier creation of the *John Q* script said little about the details of Mr. Kearns' work and thus did not establish

4

independent creation of the allegedly infringing work at issue in the case.

Defense counsel sent Mr. Nix another letter in reply. *Id.* (Ferber Apr. 26, 2005 letter). Counsel took issue with the reasonableness of Mr. Nix's inquiry regarding the articles discussing Mr. Kearns' earlier creation of a *John Q* screenplay. Counsel also took issue with Mr. Nix's contention that there were significant similarities between the two works at issue, challenging Mr. Nix to identify them. Defense counsel again warned Mr. Nix that defendants intended to pursue a request for sanctions. There is no indication that Mr. Nix replied to defense counsel's letter.

At the same time Judge Nordberg dismissed certain of Mr. Tillman's claims, he also denied what he termed Mr. Tillman's "implicit" request for leave to file a second amended complaint – effectively dismissing the two new state law claims included in that version of the complaint. On January 8, 2007, Judge Nordberg denied Mr. Tillman's motion for reconsideration of that decision. Mr. Nix then filed, on Mr. Tillman's behalf, an unsuccessful interlocutory appeal from the denial of his motion for reconsideration.

On March 22, 2007, Mr. Tillman renewed his request for leave to file a second amended complaint. On April 20, 2007, the remaining defendants moved for summary judgment on all remaining claims in Mr. Tillman's first amended complaint. About two weeks later, on May 3, 2007, Mr. Nix moved to withdraw as Mr. Tillman's counsel. His motion cited "recently discovered" information "that makes successful representation more challenging." Mr. Nix stated that he had spoken to Mr. Tillman about the risk of sanctions but that Mr. Tillman wished to proceed with the suit. Judge Nordberg granted Mr. Nix's motion but said that Mr. Nix would be subject to any sanctions that the Court

might later impose.

The case was reassigned to this Court's docket on May 25, 2007.  On August 27, 2007, proceeding *pro se* once again, Mr. Tillman moved to compel discovery.  Following briefing, the Court denied Mr. Tillman's motion on November 4, 2007.

The Court granted summary judgment in the remaining defendants' favor on March 7, 2008.  *See Tillman v. New Line Cinema Corp.*, No. 05 C 910, 2008 WL 687222 (N.D. Ill. Mar. 7, 2008).  Defendants thereafter filed the present motion for attorney's fees.

## Discussion

### I.    Whether attorney's fees should be awarded

#### A.    17 U.S.C. § 505

Defendants seek an award of attorney's fees from Mr. Tillman under the Copyright Act, which provides that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  The decision whether to award attorney's fees to prevailing parties is committed to the district court's discretion. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522 (1994).  The Supreme Court in *Fogerty* suggested several factors courts may consider in exercising this discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 534 n.19 (internal quotation marks and citations omitted).

In an effort to simplify the "laundry list" of relevant factors from *Fogerty*,  the Seventh Circuit has stated that "the two most important considerations in determining

6

whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). "When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong . . . for without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Id.* at 437.

New Line and Time Warner defended against Mr. Tillman's claims for three years, ultimately prevailing in full. Defendants' case was overwhelmingly strong. They provided unrefuted documentary and testimonial evidence that Mr. Kearns had independently created the *John Q* screenplay years before Mr. TIllman wrote his *Kharisma Heart of Gold* screenplay. In response, the Court observed in its March 7, 2008 opinion, Mr. Tillman presented only "unsupported conspiracy theories and conclusory accusations of lying." *Tillman*, 2008 WL 687222, at *6. In addition to proving prior and independent creation of the *John Q* screen play, defendants also demonstrated that no reasonable jury could find the two works to substantially similar, a threshold requirement for a successful copyright infringement claim (absent proof of actual copying, which was lacking in this case). *Id.* at *9.

The Court does not doubt that Mr. Tillman believed his copyright infringement claim was valid. That belief, however, appears to have been based on a combination of his apparent misunderstanding of copyright law and his apparent unwillingness to come to grips with the evidence that undermined his claims. As the Court observed in its summary judgment ruling, there was arguably some overall thematic similarity between

7

*John Q* and *Kharisma Heart of Gold*, at least at a very general level. But such overall thematic similarity does not establish copyright infringement; in this case, any similar elements were general ideas and *scènes à faire*, which are not protected by copyright law. In addition, on the question of independent creation, the evidence established beyond question that Mr. Kearns had written the screenplay that ended up as *John Q* before Mr. Tillman created his *Kharisma Heart of Gold* screenplay. When faced with this evidence, Mr. Tillman took the position that it was all concocted. He was able to do so only by, in effect, shutting his eyes to what the evidence showed.

The Court cannot escape the conclusion that Mr. Tillman's claims were entirely baseless, both factually and legally. This is not a case in which the opposing parties had "different, but reasonable, views of the law with an uncertain outcome." *Cf. Traicoff v. Digital Media, Inc.*, No. 03 C 1791, 2007 WL 2286133, at *2 (S.D. Ind. Aug. 7, 2007). Rather, Mr. Tillman offered no evidence of substantial similarity between any expression in *John Q* and anything in his own work that is actually protected by copyright, and he offered no evidence that tended to undercut defendants' evidence showing that long before he wrote *Kharisma Heart of Gold*, Mr. Kearns created *John Q*.

Together, the strength of defendants' case and defendants' inability to recover damages create a strong presumption in favor of awarding fees. Mr. Tillman has done nothing to try to rebut that presumption. Instead, he devoted virtually his entire brief to rearguing his opposition to defendants' motion for summary judgment, a lost cause at this point. The Court does not relish awarding attorney's fees against an individual *pro se* plaintiff, particularly one whose beliefs about the merits of his claim are likely to have been reinforced, at least for a significant period, by legal counsel. But at least Mr. Nix

was, eventually, willing to face reality and withdraw from the case. Mr. Tillman pressed ahead with his baseless claims even when confronted with defendants' summary judgment motion.

For these reasons, the Court concludes that defendants have established an entitlement to an award of reasonable attorney's fees and expenses against Mr. Tillman under 17 U.S.C. § 505.

### B. 42 U.S.C. § 1988

Under 42 U.S.C. § 1988(b), a court may award reasonable attorney's fees to the prevailing party in an action brought under (among other provisions) 42 U.S.C. §§ 1983 and 1985. Tillman asserted claims under these statutes for denial of equal protection, deprivation of due process, and civil conspiracy. Judge Nordberg dismissed the claims. Defendants seek to recover a small proportion of their overall attorney's fees in connection with these claims. There is no question that they are the prevailing parties on the section 1983 and 1985 claims; a prevailing party is one who "obtains a 'material alteration of the legal relationship of the parties.'" *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (quoting *Buckhannon Board & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001)).

Under section 1988, "prevailing defendants have a much harder row to hoe than do prevailing plaintiffs" in attempting to recover attorney's fees. *Roger Whitmore's Auto Servs., Inc. v. Lake County*, 424 F.3d 659, 676 (7th Cir. 2005). A prevailing defendant is entitled to fees "only in cases in which the plaintiff's action was frivolous, unreasonable, or groundless." *Id.* Mr. Tillman's claims under sections 1983 and 1985 were legally frivolous. As defendants pointed out in their motion to dismiss, Mr. Tillman

failed to identify the violation of any federal constitutional right – primarily because the

constitutional prohibitions at issue are directed to governmental actors, not private

persons and entities like the defendants Mr. Tillman sued.  In short, the claim was

without a viable legal basis (not to mention the absence of a legitimate factual basis).

For this reason, defendants are entitled under section 1988 to an award of attorney's

fees against Mr. Tillman.

### C.     28 U.S.C. § 1927

Defendants also request sanctions against both Mr. Tillman and Mr. Nix pursuant

to 28 U.S.C. § 1927.  Under that statute, "[a]ny attorney or other person admitted to

conduct cases in any court of the United States . . . who so multiplies the proceedings in

any case unreasonably and vexatiously may be required by the court to satisfy

personally the excess costs, expenses, and attorney's fees reasonably incurred

because of such conduct."  28 U.S.C. § 1927.

Defendants are not entitled to a fee award under section 1927 against Mr.

Tillman, who is not an attorney.  The circuits that have considered whether section 1927

permits an award of fees against a *pro se* party who is not an attorney have split.

*Compare Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (fee award unavailable) *with*

*Wages v. IRS*, 915 F.2d 1230, 1235-36 (9th Cir. 1990) (fee award available).  The

Seventh Circuit has not taken a position on the point.  *See, e.g., Alexander v. United*

*States*, 121 F.3d 312, 316 (7th Cir. 1997).  The courts that have permitted a fee award

under section 1927 against a non-attorney *pro se* party have proceeded on the basis

that such a party is a "person admitted to conduct cases in [a] court of the United

States."  The Court agrees, however, with its colleague Judge James B. Zagel, who, in

10

*Kim v. Earthgrains Co.*, No. 01 C 3895, 2003 WL 41643 (N.D. Ill. Jan. 3, 2003),

concluded that section 1927 does not permit a fee award against a *pro se* party who is

not an attorney.  As Judge Zagel stated in that case,

> I am persuaded by the Second Circuit's opinion in *Sassower* that § 1927
> should not be applicable to non-attorney pro se plaintiffs litigating in good
> faith.  As *Sassower* noted, the word "admitted" in the context of § 1927
> suggests application to those who, like attorneys, gain approval to appear
> in a lawyer-like capacity.  Furthermore, as the Second Circuit noted, it
> appears unlikely that Congress intended the phrase "other person" to
> include a person lacking lawyer-like credentials because the prior version
> of the statute read "any attorney, proctor, or other person admitted."

*Id.* at *1 (citations omitted).  This Court agrees with Judge Zagel; the language of

section 1927 points away from fee awards against *pro se* plaintiffs.  Specifically, *pro*

*se* plaintiffs are not "admitted" to conduct cases; an individual does not need a court's

permission to litigate his own case.

In *Alexander*, the Seventh Circuit approved sanctions on an alternative basis,

based on the inherent authority of a court to sanction vexatious litigation conduct.

Defendants, however, have not sought sanctions on that alternative basis.  In any

event, defendants need not rely on such grounds to obtain a fee award against Mr.

Tillman in light of the Court's granting of their request for attorney's fees under 17

U.S.C. § 505.

With regard to defendants' request for sanctions against Mr. Nix, the Seventh

Circuit has stated that "[i]f a lawyer pursues a path that a reasonably careful attorney

would have known, after appropriate inquiry, to be unsound, the conduct is objectively

unreasonable and vexatious" and thus sanctionable under section 1927.  *Dal Pozzo v.*

*Basic Machinery Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (internal quotation marks and

citation omitted); *Kapco Mfg. Co. v. C&O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1988).

There is good reason for courts to be wary of requests for sanctions under section 1927. Too-frequent imposition of sanctions under this and other similar provisions like Federal Rule of Civil Procedure 11 risks chilling zealous and creative advocacy as well as potentially meritorious claims that circumstances make difficult to prove. But Mr. Nix's conduct of this case went beyond mere zealous advocacy. He filed claims for constitutional rights violations that did not have a prayer of success in light of the absence of any governmental action. When faced with a motion to dismiss the claims he added in the first amended complaint he filed on Mr. Tillman's behalf, Mr. Nix did not even try to defend them – even after being urged by the magistrate judge to do so if he had something to say – but rather just plowed ahead, adding two more demonstrably meritless state law claims. He then took a frivolous interlocutory appeal from Judge Nordberg's denial of his motion to reconsider the denial of leave to amend, a plainly non-appealable ruling. And when confronted, shortly after being retained, with the evidence showing that Mr. Kearns had written his *John Q* script long before Mr. Tillman penned *Kharisma Heart of Gold*, Mr. Nix spun a conspiracy theory after performing a patently inadequate investigation to "find" evidence that was in plain sight or readily available via the discovery process.

In his response to defendant's motion, Mr. Nix focuses on the evidence regarding Mr. Kearns' independent prior creation of his work. Mr. Nix does not dispute his awareness of this evidence but says there were factors that would have led a reasonable lawyer to question its authenticity. He points primarily to the following:

12

-        Mr. Kearns did not register *John Q* with the Copyright Office, and no one registered it until some time after Mr. Tillman created *Kharisma Heart of Gold* in 1998.

-        The eventual copyright registration for *John Q* stated that it had been created in 2000, not 1993 (the date defendants contended Mr. Kearns created the screenplay).

-        Mr. Nix says he could not verify the authenticity of certain trade-publication articles referring to Kearns' screenplay that defendants cited and that predated Tillman's creation of his work.

Mr. Kearns' non-registration of his work prior to Mr. Tillman's registration of his screenplay is, by itself, a non-issue.  Liability in a copyright case does not turn on registration.  On the other hand, the notation in the eventual registration of the *John Q* screenplay that the work was created in 2000[1] would be significant had it been the only evidence regarding Mr. Kearns' creation of *John Q* that Mr. Nix had, for that date postdated the creation of Mr. Tillman's work by two years.  But it was not the only evidence; it was accompanied by the articles defendants cited to Mr. Nix shortly after his entry into the case, which (as noted earlier) reflected that Mr. Kearns had, in fact, created his screenplay several years before Mr. Tillman's.  There is not, and never was, a legitimate question regarding the authenticity of these articles; Mr. Nix did not make a reasonable effort to confirm their authenticity after defendants cited them.  The most significant of the articles is one from the November 15, 1993 edition of *Daily Variety* that described Mr. Kearns' screenplay in some detail and thus confirmed he had created it

---

[1] Though defendants ultimately showed that this was an error made by the person (not Mr. Kearns) who prepared the copyright registration form, there is no indication that explanation was given to Mr. Nix early on.

prior to Mr. Tillman's work. Mr. Nix's response to defendants' motion reflects that in trying to find the article on his own, he looked only at the weekly version of *Variety*, not *Daily Variety*, the daily publication that defendants had unambiguously cited. *Compare* Nix Decl., Ex. B, p. 1 (copy of the article defendants cited from the Monday, Nov. 15, 1993 edition of *Daily Variety*) *with id.*, pp. 5 *ff.* (copy of Nov. 15, 1993 edition of *Variety*, clearly marked below the publication's title as "The International Weekly" and containing no reference to *Daily Variety*). A reasonably careful attorney would have realized he was comparing apples with oranges.

Perhaps just as importantly (as defendants point out), if Mr. Nix had legitimate doubts about the authenticity of the *Daily Variety* and other articles defendants cited, one would have expected that upon, or shortly after, his entry into the case and filing of an amended complaint, he would have requested from the publications records regarding the cited articles, to determine their authenticity once and for all. Yet he did not do so. These were not the acts of a reasonably careful attorney confronted with evidence that completely undermined his claims.

Mr. Nix makes the point that contingent-fee lawyers tend not to take on cases that they believe are lost causes. That is certainly consistent with the undersigned judge's experience. But the relevant inquiry is not whether Mr. Nix believed in his case; the question is whether he pursued an objectively unreasonable course. The fact that contingent-fee lawyers generally have an economic disincentive to pursue objectively baseless cases does not mean that Mr. Nix did not do so in this case.

The Court need not, however, dwell further on the patent deficiencies in Mr. Nix's investigation of the issue of independent creation, for there is another basis

supporting imposition of sanctions under section 1927. That concerns the issue of substantial similarity. Mr. Nix has made no effort in his response to defendants' motion for sanctions, just as he made no effort in his response to defense counsel's April 2006 correspondence, to identify any particular expression or element in *John Q* that is substantially similar to copyrightable expression in Mr. Tillman's work. Finding this did not require Mr. Nix to investigate the authenticity of articles cited by defense counsel; it simply required him to review and compare the two works. The bottom line is that no such substantial similarities existed. In short, Mr. Nix does not offer anything to undermine defendants' overwhelming showing that the only arguable similarities between *John Q* and *Kharisma Heart of Gold* involved non-copyrightable elements. The absence of such evidence – the *sine qua non* of a valid copyright claim in most cases – would have been apparent to a reasonable attorney at the outset of the case.

In sum, the Court finds that Nix unreasonably and vexatiously multiplied the proceedings in this case, entitling defendants to sanctions under section 1927.

## II. Calculation of fees

The Court begins its analysis of reasonable attorney's fees by determining the "lodestar": "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Defendants bear the burden of proving the reasonableness of "the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). The Court must exclude any hours not "'reasonably expended' on the litigation," and may, after consideration of a variety of factors, increase or reduce the "modified lodestar amount." *Id.* (quoting *Hensley*, 461 U.S. at 434-35). *Hensley* requires a petitioner for

15

fees to exercise "billing judgment," meaning that the petitioner must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Defendants seek fees under 28 U.S.C. § 1927 of a total $298,992.95, representing 1,313.05 hours of attorney, paralegal, managing clerk, and librarian time (1,259.3 hours of attorney time, 33.4 hours of paralegal time, 19.55 hours of managing clerk time, and 0.8 hours of librarian time). Of this, they attribute $206,007.70 to Mr. Nix and the remainder, $92,875.25 to Mr. TIllman. Defendants seek fees of $281,069.95, the amount they attribute to the copyright claims, under 17 U.S.C. § 505, and $7,634.13, the amount they attribute to the civil rights claims, under 42 U.S.C. § 1988.

### A.    Hourly rates

Defendants seek hourly rates of $345-480 for partners Stephen Huff and Tom Ferber and $210-$325 for associates Stacy Faraci, Emily Frangos, Carletta Higginson, and Colleen Parker – rates that they contend represent discounts defendants enjoyed off of the attorneys' regular hourly rates. The reasonable hourly rate for an attorney is the market rate for her services. *See Fogle v. William Chevrolet/Geo Inc.*, 275 F.3d 613, 615 (7th Cir. 2001). The attorney's actual billing rate is "presumptively appropriate to use as the market rate." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996)). "Only '[i]f the court is unable to determine the attorney's true billing rate . . . (because he maintains a contingent fee or public interest practice, for example)' should the court 'look to the next best evidence – the rate charged by lawyers in the community of reasonably comparable skill, experience, and

reputation.'" *Id.* at 909-10 (quoting *People Who Care*, 90 F.3d at 1310).

Defendants have attached copies of the monthly bills they received from their lawyers at Pryor Cashman between 2005 and 2008. *See* Ferber Suppl. Decl., Ex. J. The bills show the hourly rates for each timekeeper who performed work on the case. These actual billing rates are presumptively appropriate, and because neither Nix nor Tillman has challenged their reasonableness, the Court will accept them for use in its calculation of the "modified lodestar amount."

The reasonable hourly rates for paralegals are also the market rates for their services. *Spegon*, 175 F.3d at 556. Plaintiffs seek hourly rates ranging from $60 to $175 for eight paralegals and four employees they describe as "managing clerks," who appear to have performed paralegal-type work. As with the attorneys, because the rates charged by the paralegals are the actual rates billed to the client, they are the presumptive market rates. Neither Tillman nor Nix has challenged their reasonableness, so the Court will not adjust them.

Defendants seek 0.8 hours for work performed by their librarian. This is clerical work that is not separately compensable. The time billed for this work is therefore disallowed.

**B.    Hours**

The party seeking fees has the burden of proving the reasonableness of the hours worked by counsel. *Spegon*, 175 F.3d at 555. Defendants provided copies of their monthly bills, showing day-by-day time entries by each timekeeper, but they did not break down the time by task. As a result, the Court cannot easily determine whether the number of hours spent on each task was reasonable.

There are other problems with defendants' petition. First, based on its own review of the three years worth of billing statements defendants submitted (consisting of over 130 pages of bills), there are significant discrepancies between the totals claimed for each timekeeper and the amounts reflected in the bills defendants have submitted. For example, defendants say that Ms. Faraci charged 513 hours, Mr. Ferber charged 455 hours, and Ms. Higginson charged 197 hours, but the bills defendants have submitted show only about 400, 368, and 141 hours, respectively. The discrepancy is twenty-plus percent in each instance. Second, the Court saw no mention in the bills of work performed by associate Colleen Parker or paralegals William R. McAllister, Robert L. Michael Jr., or Margaret Mitchell, despite the fact that defendants claimed 8.9 hours for them. Third, due to block billing – the lumping of disparate tasks into a single time entry – it is difficult to assess the reasonableness of the amount of time defendants' counsel devoted to a given task.

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or . . . reduce the proposed fee by a reasonable percentage." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *see also Hensley*, 461 U.S. at 433. In light of the block-billing and the significant discrepancies in the hours claimed, the Court reduces the amount claimed by one third. This calculation results in the following "modified lodestar amounts": $188,316.87 for purposes of the claim against Mr. Tillman under 17 U.S.C. § 505; $5,114.98 for purposes of the claim against Mr. Tillman under 42 U.S.C. § 1988; and $138,025.16 for purposes of the claim against Mr. Nix under 28 U.S.C. § 1927.

The Court declines, however, to make fee awards in these amounts. The first

question is the amount of the fees to be awarded against Mr. Nix under section 1927. In this regard, it is appropriate to take into account the fact that when confronted with defendants' motion for summary judgment – the first occasion, as best as the Court can determine, that defendants explained the mistaken reference in the *John Q* copyright registration to a creation date of 2000 – Mr. Nix did the right thing and withdrew from the case. Though he should have done so far sooner, Mr. Nix's voluntary withdrawal from the case strongly indicates that an award of the full modified lodestar amount is unnecessary for purposes of deterrence and would be unduly punitive. The Court awards defendants $60,000 against Mr. Nix (about forty percent of the modified lodestar amount) as a sanction under section 1927. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 206) (affirming award of $10,000 – below the modified lodestar amount of $42,294 – on the ground that it provided sufficient punishment and deterrence); *Pentagen Tech. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001) (fee award under section 1927 "should be the minimum needed to deter plaintiff's counsel's conduct without over-punishing him"), *aff'd*, 63 Fed. Appx. 248 (2d Cir. 2003). Mr. Nix's liability will be joint and several with that of Mr. Tillman described below.

With regard to Mr. Tillman, in determining a fee award under 17 U.S.C. § 505, a court should consider factors such as frivolousness, motivation, objective unreasonableness, "and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (internal quotation marks and citation omitted). Mr. Tillman should have dropped the case when his first attorney withdrew after being confronted with the evidence undermining his claims; he

19

had been given fair warning at that point regarding the baselessness of his claims of copyright infringement. On the other hand, it is only fair to infer that the fact that Mr. Nix was willing to take over the case gave Mr. Tillman some hope (albeit unreasonable) of success. Even so, Mr. Tillman should have dropped the case when Mr. Nix withdrew. Under the circumstances, the Court believes that considerations of deterrence counsels imposition of what reasonably would be considered a significant (for an individual litigant) but modest additional amount beyond the fees imposed upon Mr. Nix. The Court awards defendants $80,000 against Mr. Tillman under 17 U.S.C. § 505 and 42 U.S.C. § 1988 – an additional $20,000 beyond the amount awarded against Mr. Nix. Liability for $60,000 of this amount will be joint and several with Mr. Nix's liability under 28 U.S.C. § 1927. To make it clear, the Court's intention is to impose a total sanction of $80,000, $60,000 of which will be the joint responsibility of Mr. Nix and Mr. Tillman, and $20,000 of which will be Mr. Tillman's sole responsibility.

### Conclusion

For the reasons stated above, the Court grants in part the motion of defendants New Line Cinema and Time Warner for attorney's fees and sanctions [docket nos. 236-1 & 236-2] and terminates as moot their request for instructions pursuant to Local Rule 54.3(g) [docket no. 236-3]. The Court awards defendants a total of $80,000 in attorney's fees, consisting of $60,000 from attorney Brian Nix under 28 U.S.C. § 1927 and $80,000 from plaintiff Chitunda Tillman, Sr. under 17 U.S.C. § 505 and 42 U.S.C. § 1988. Liability for $60,000 shall be joint and several as between Mr. Nix and Mr.

Tillman, and liability for $20,000 shall be Mr. Tillman's sole responsibility.

MATTHEW F. KENNELLY
United States District Judge

Date:  December 31, 2008